**Mrs. Jewel A. MADLOCK, Plaintiff,**

v.

**SARDIS LUGGAGE COMPANY, Defendant.**

**Mrs. Jewel A. MADLOCK, Plaintiff,**

v.

**U. S. INDUSTRIES, Defendant. Nos. DC 693, 694–S.**

United States District Court
N. D. Mississippi,
Delta Division.
Aug. 13, 1969.

Robert Fitzpatrick, Jackson, Miss., for plaintiff, Mrs. Jewel A. Madlock.

Leslie L. Inman, Kullman, Lang, Keenan, Inman & Bee, New Orleans, La., William H. Fedric, Grenada, Miss., for defendant, U. S. Industries.

Frederick S. Kullman, Kullman, Lang, Keenan, Inman & Bee, New Orleans, La., Herbert M. Fant, McClure, Fant & McClure, Sardis, Miss., for defendant, Sardis Luggage Co.

Charles Wilson, Office of the Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., for

Equal Employment Opportunity Commission.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

Each of the above captioned and numbered actions is before the Court on a Motion For Leave To Add Plaintiffs And To File A Substitute Amended Complaint.

Identical issues are presented by the Motions. They will be considered together by the Court. This opinion deals with both Motions.

Mrs. Jewel A. Madlock is the plaintiff in each action.

Plaintiff filed her complaint against defendant U. S. Industries, Inc., in Cause DC 694–S, and her complaint against defendant Sardis Luggage Company, in Cause DC 693–S on January 30, 1969.

Plaintiff is a Negro. In each action she seeks to enjoin alleged racially discriminatory and unlawful employment practices on the part of the defendant. Plaintiff brings the action in each case in her own behalf and in behalf of all other Negroes similarly situated, who are subjected to and affected by such alleged unlawful practices. Each action is filed pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter called the "Act"), 42 U.S.C. § 2000e et seq. Plaintiff seeks the injunction and other relief for which provisions are made in 42 U.S. C. § 2000e–5(g).[1]

Plaintiff seeks in her complaint in each case, (1) injunctive relief for herself and members of her class to prevent defendant, its agents, successors, employees and those acting in concert with them from discriminating on the grounds of race against Negroes who apply for employment, (2) immediate employment by defendant with seniority or other privileges equivalent to what plaintiff would have accrued but for defendants' alleged discriminatory actions, (3) the recovery of loss of income suffered by her because of defendants' alleged unlawful acts, (4) costs of the suit, and (5) such other relief as appears to be equitable and just.

Plaintiff complied with the requirements of 42 U.S.C. § 2000e–5 in that before she filed suit against each defendant she filed a sworn charge of unlawful and discriminatory employment practice with the Equal Employment Opportunity Commission (hereinafter referred to as EEOC), and received a letter from the Commission that conciliation efforts by the Commission had failed to achieve voluntary compliance by defendant with Title VII of the Civil Rights Act of 1964, and she was authorized to proceed with suit. It is not disputed that plaintiff filed her sworn charge with EEOC, within the time and in the manner prescribed by the Act, and that her suit had been timely filed.[2]

1. 42 U.S.C. § 2000e–5(g) provides:
   "(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice). Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex or national origin or in violation of section 2000e–3(a) of this title."

2. In the action against Sardis Luggage Company, DC 693–S plaintiff made application to defendant for work on March 1, 1968. On March 5, 1968, she filed a

Plaintiff filed her motion under consideration here in the action against United States Industries, Inc., DC 694–S, on or about May 17, 1969. Plaintiff seeks to add as parties plaintiff eight members of the class which she claims to represent, that is to say persons of the Negro race, who allegedly made application to defendant for work and were the victims of racial discrimination. The additional parties seek all relief provided by the Act. None of them filed charges with EEOC that defendant had discriminated against them and had refused to employ them on account of their race. The persons who seek to intervene as parties plaintiff did not comply with the provisions of the Act which requires the filing of sworn charges with EEOC.

In her action against Sardis Luggage Co., Inc., DC 693–S, plaintiff filed a motion on or about May 12, 1969, similar in all respects to the motion in the action against United States Industries, Inc., DC 694–S, on behalf of thirteen other members of the class which she claims to represent. All of these parties had been unable to secure employment from defendant, but none of these had filed charges with EEOC as the Act requires.

The Court has not entered an order herein making a determination whether class actions may be maintained by plaintiff in the two cases sub judice. Such a determination is required by Rule 23(c)(1) Federal Rules of Civil Procedure.[3]

Since the rule provides that such a determination shall be made as soon as is practicable after the commencement of an action brought as a class action, it is appropriate for the Court to do so at this time.

The portions of Rule 23, Federal Rules of Civil Procedure, pertinent to the cases sub judice are:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the

sworn charge with EEOC, which contained this language:

"Sardis Luggage Company of Sardis, Mississippi has discriminated against me because of my race by refusing to hire me on March 1, 1968, and numerous other previous times when I applied for work for which I was fully qualified and available. Sardis Luggage Company has discriminated against numerous other Negroes also by refusing to hire me because of their race."

Plaintiff received a letter from EEOC which contained, inter alia, the following:

"This is to advise you that conciliation efforts in the above matter have failed to achieve voluntary compliance with Title VII of the Civil Rights Act of 1964. Pursuant to Section 706(e) of the Act, you are hereby notified that you may, within thirty (30) days of the receipt of this letter, institute a civil action in the appropriate Federal District Court." (Letter dated Jan. 9, 1969).

This action was filed January 30, 1969. In her action against U. S. Industries, Inc., DC 694–S plaintiff alleges that she applied to defendant for work on February 12, 1968; that she filed her sworn charge with EEOC, in which she stated:

"U. S. Industries, Inc. of Batesville, Mississippi, has discriminated against me because of my race on or about February 12, 1968, and previous times, by refusing to hire me in employment for which I was fully qualified and available."

The complaint alleges further that plaintiff received a letter from EEOC similar to the one received by her with reference to the Sardis Luggage Company charge on January 9, 1969. She filed this action on January 30, 1969.

3. Rule 23(c)(1) Federal Rules of Civil Procedure provides:

"(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

The Advisory Committee's notes on the 1966 amendment sets forth:

"Subdivision (c)(1). In order to give clear definition to the action, this provision requires the court to determine, as early in the proceedings as may be practicable, whether an action brought as a class action is to be so maintained. The determination depends in each case on satisfaction of the terms of subdivision (a) and the relevant provisions of subdivision (b)."

class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; \* \* \* "

Plaintiff, a member of the Negro race, applied for employment with the defendant in each case. She states in her charge filed with EEOC against Sardis Luggage Co., that she was refused employment on account of her race, when she was otherwise qualified to perform the work. In addition she alleges that Sardis refused to employ other Negroes because of their race.

In the charge filed with EEOC against U. S. Industries plaintiff alleges that the company refused to employ her because of her race when she was otherwise qualified to perform the work. It is noted that plaintiff, in her charge against U. S. Industries, failed to include a charge of discrimination against Negroes generally.

The Court cannot determine that there is any real difference in the charges. Both contain the statement that plaintiff was the subject of unlawful discriminatory employment practices in that each defendant unlawfully discriminated against her on account of her race.

This view is supported by the liberal treatment afforded a lay-initiated proceeding. All that is required is that the charge give sufficient information to enable EEOC to see what the grievance is all about. Georgia Power Company v. EEOC, 5 Cir. 1969, 412 F.2d 462; Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28, 30 N. 3. The language in each charge is sufficient to inform EEOC that a charge is made against the defendant of unlawful racial discrimination in employment practices.

Thus, we have in each case, a plaintiff, a Negro, who has been the subject of racially discriminatory employment practices prohibited by the Act. Clearly, plaintiff's class, in each case, would be members of the Negro race, who have applied to defendant for work and who have been denied employment on account of their race.

The complaints are sufficient to charge that each defendant refused to take such action with reference to the class represented by plaintiff as to make employment available to them on a non-discriminatory basis.

It is equally clear that final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior of the defendants, with respect to the class as a whole, is appropriate.[4]

---

4. The Advisory Committee's note on Rule 23, Subdivision (b) (2) states:

"Subdivision (b) (2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief 'corresponds' to injunctive relief or serves as a basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages. *Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.* Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully

In this circuit at least it is settled that each of these cases is an appropriate case for a class action.[5]

The Court will enter an appropriate order making the determination that each case sub judice can be maintained as a class action, describing therein the class represented by plaintiff.

Plaintiff, in each case, seeks to bring in other members of her class as co-plaintiffs. The additional plaintiffs seek all of the relief afforded by the Act, regardless of the fact that they did not file formal charges of unlawful discrimination with EEOC.

Defendants contend that should these parties be permitted to enter the cases as co-plaintiffs the relief to which they might be entitled should be restricted to prohibitory injunctive relief. The contention is made that such parties are barred from seeking individual affirmative relief, such as employment, back pay, etc., because they did not file charges with EEOC within the time permitted by the Act.[6]

The settled law in this Circuit compels the holding that the additional parties should be admitted as co-plaintiffs, at least insofar as injunctive relief is concerned.

The only real issue seems to be whether they are entitled to seek the other affirmative relief provided by the Act. should they receive a favorable decision of the case on its merits.

In support of their position that recovery by the additional plaintiffs should be restricted to injunctive relief, defendants rely heavily on the decisions in Hall v. Werthan Bag Corp., 251 F.Supp. 184 (M.D.Tenn.1966), and Bowe v. Colgate Palmolive Co., 272 F.Supp. 332 (S. D.Ind.1967). These district court cases appear to suggest, to some extent, this theory. In *Hall,* the plaintiff, Robert Hall, filed charges with EEOC that defendant Werthan Bag Corp. refused to provide him and other Negroes similarly situated training opportunities, wage increases and transfers, while making the same available to newly-hired white employees, and that defendant maintained a segregated job classification structure in reserving specific classifications for white employees only. Ray Tate, a Negro employed by defendant, moved to intervene in the action as a plaintiff. The Court held that Tate should be allowed to intervene but only to the extent that he might seek prohibitive injunctive relief. Tate was not permitted to seek back pay or reinstatement because he had not filed a charge with EEOC as the statute requires.

In this regard the Court said:

"In regard to the injunctive relief sought in this case, therefore, the purpose of the requirement of resort to the Commission has already been served. In regard to whatever back pay or reinstatement which might be sought as ancillary relief, however, the purpose of the administrative remedies requirement has been satisfied only as to Robert Hall, for the Commission *has not attempted conciliation in regard to rectifying any alleged injuries which other Negro employees or would-be employees may claim to have suffered as a result of the defendant's alleged discrimination."* 251 F.Supp. 188. [Emphasis added].

It is noted that the Court bottomed its refusal to permit Tate to seek full relief on the absence of conciliation procedure. Since *Hall* was decided the Fifth Circuit has held that it is not necessary for a complaining party to show that conciliation has been undertaken and failed before such party is authorized to bring

---

against a class, usually one whose members are incapable of specific enumeration." [Emphasis added].

5. See Oatis v. Crown Zellerbach Corp., 5 Cir., 1968, 398 F.2d 496; Jenkins v. United Gas Co., 5 Cir. 1968, 400 F.2d 28, 33, 34, Footnotes 14 and 15; Pettway v.

American Cast Iron Pipe Co., 5 Cir. 1939, 411 F.2d 998.

6. 42 U.S.C. § 2000e–5(d) provides that the charge shall be filed with EEOC by the injured party within ninety days after the unlawful employment practice has occurred.

suit. It is only necessary for a party to show that the charge was filed with EEOC, and a suit letter has been issued. Dent v. St. Louis-San Francisco Ry. Co., 406 F.2d 399 (5th Cir. 1969).[7]

In *Bowe* certain female employees of Colgate-Palmolive Company filed a class action charging that Colgate intentionally discriminated against female employees at its Jeffersonville plant by a system of segregation and classification by sex whereunder females were deprived of certain employment opportunities in some job classifications, and that layoffs accruing during 1965 were discriminatory to females because such layoffs were made from separate male and female seniority lists. The Court permitted others of the class to intervene. In discussing the relief which might be sought by plaintiffs the Court held: "that each plaintiff would be required to demonstrate by sufficient proof that she had filed a charge with the EEOC and *received a letter of probable cause before she could become eligible to collect damages or seek reinstatement as employment preference with Colgate*".

Thus, it is noted that in *Bowe* the Court fixed as one of the conditions precedent to the recovery of damages, reinstatement or employment preference by plaintiffs, the recept of a letter of probable cause from EEOC. Again Dent

acts to dilute the importance of the decision in the cases sub judice.

Plaintiff cites a number of cases in which non-charging plaintiffs were awarded affirmative relief. These cases, however, are not in point with the cases sub judice.

Rosen v. Public Service Electric & Gas Co., 409 F.2d 775 (3rd Cir. April 1, 1969) was instituted by two individuals, Rosen and Sweeney, and a labor union representing its members. The district court granted summary judgment. On appeal plaintiffs (appellants) contended that the original complaint was not mooted by a revision of the pension plan under attack because there was the possibility that some employees may have suffered money damages before the change was made and because the district court failed to determine whether injunctive relief was necessary to protect the public interest. The Circuit Court determined that there was merit in the first part of appellants' argument, i. e., the possibility of the employees of the appellee-company having suffered harm before the pension plan modification. Accordingly the court remanded the case for a determination as to whether any of the named appellants, and any other male members of the union, having retired between the date of the initial 1965 charges before the EEOC and the May 1st 1967 change, and thus may have

---

7. In *Dent* the court said:

"Thus it is quite apparent that the basic philosophy of these statutory provisions is that voluntary compliance is preferable to court action and that efforts should be made to resolve these employment rights by conciliation both before and after court action. However, we are of the opinion that a plain reading of the statute does not justify the conclusion that, as a jurisdictional requirement for a civil action by the aggrieved employee under Section 706(e) the Commission must actually attempt and engage in conciliation.

\* \* \* \* \*

In arriving at the conclusion that actual conciliatory efforts are jurisdictionally prerequisite, the District Court relied heavily on the legislative history of the Act. The majority and the dissenting opinions in Johnson and Walker, 4 Cir.,

supra [Ray Johnson v. Seaboard Coast Line Railroad Company and Charles W. Walker v. Pilot Freight Carriers, Inc., 405 F.2d 645], extensively analyze this aspect of the problem, obviating any necessity for prolonged repetition here. As a matter of fact, the Congressional committee reports and floor debates lend great comfort to both sides. This, we believe, leaves no clearly discernible Congressional intent, certainly not enough to avoid plain statutory language. Section 2000e-5(e), Title 42, U.S.C.A. very clearly sets out only two requirements for an aggrieved party before he can initiate his action in the United States district court: (1) he must file a charge with the Equal Employment Opportunity Commission and (2) he must receive the statutory notice from the Commission that it has been unable to obtain voluntary compliance.

been harmed by the alleged discrimination in the pension benefit formula. Footnote 19 to the opinion states:

"Because, as previously stated, a number of other members of the union filed charges of discrimination with the EEOC, which the Commission by agreement with appellee (App. 85a) consolidated with the prior charges for purposes of investigation, and because of the apparent right of the union to bring this action on behalf of its members. International Chemical Workers Union v. Planters Manufacturing Co., [54 LC § 9025] 259 F.Supp. 365 (N.D.Miss.1966), we believe that the court may consider possible harm not only to the named appellants but also to other members of the union."

It is apparent, therefore, that in *Rosen,* the Court had under consideration a suit in which a union had filed charges with EEOC on behalf of all of its members. Such is not the case in the cases sub judice.

Plaintiffs cite Quarles v. Philip Morris, Inc., 279 F.Supp. 505, 507 (E.D.Va. 1968), where the Court held "each member of the class was not required to pursue administrative relief for the correction of the same employment practices." The court granted relief to a member of the class, who is not shown to have filed a charge with the Commission. The relief granted brought her wages up to the appropriate rate. The court, however, expressly stated "Back pay is not an issue". 279 F.Supp. 510.

Plaintiff calls the Court's attention to Dobbins v. Local 212, International Brotherhood of Electrical Workers, U.S. D.C., S.D.Ohio, W.D.1968, 292 F.Supp.

413, wherein it said that a discriminatee, who had neither filed a charge with the Commission nor intervened as a party-plaintiff in the action, was admitted to membership in an apprenticeship training program at a wage scale he would have achieved if not for the discrimination. This appears to be a correct statement of the holding of the Court. A study of the case develops that Dobbins' case was not a class action. It was bottomed on 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq. Thereafter the United States filed a Title VII action against the same party.[8] These cases were consolidated for trial and the training committee was brought in as a party.

*Dobbins* is not, therefore, directly in point with the cases sub judice, as the action in which the affirmative relief was granted the discriminatee, who was neither a party, nor a person who had filed a charge with the Commission, was brought by the Sovereign, for the benefit of all interested and affected parties.

A careful study of these cases does not give the Court a clear rule to follow in the cases sub judice.

The Court must attempt to determine the effect of the pertinent sections of the Act.

In order to institute proceedings of unlawful and discriminatory employment practices by an employer covered by the Act, an aggrieved party is required to file a sworn written statement of the nature of his charges with EEOC. A member of the Commission may institute the proceedings by filing with EEOC a written charge that he has reasonable cause to believe a violation of the law has occurred. Thus, the proceedings

---

**8.** 42 U.S.C. § 2000e–6(a), provides:

"(a) Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the

United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described."

may be instituted by the aggrieved party or by a member of the Commission.[9]

In either event, the Act provides that a copy of the charge shall be furnished the employer or other organization accused of the unlawful employment practice and that EEOC shall make an investigation of the matter. If EEOC finds reasonable cause to believe that the charge is true, the Act provides that EEOC shall endeavor to eliminate the unlawful practice by informal methods of conference, conciliation, and persuasion.

The charge must be filed wtihin ninety days after the alleged unlawful employment practice occurs, except in instances which are not applicable to the cases sub judice.[10]

If within thirty days (in some instances sixty days) EEOC has been unable to obtain voluntary compliance with the provisions of the Act, EEOC is required to notify the person aggrieved, and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge (1) by the person claiming to be aggrieved, or (2) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice.[11]

9. 42 U.S.C. § 2000e–5(a), provides, inter alia,

"(a) Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this subchapter has occurred (and such charge sets forth the facts upon which it is based) that an employer, employment agency, or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, employment agency, or labor organization (hereinafter referred to as the 'respondent') with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commission. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such endeavors may be made public by the Commission without the written consent of the parties, or used as evidence in a subsequent proceeding."

10. 42 U.S.C. § 2000e–5(d), provides:

"(d) A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred, except in the case of an unlawful employment practice with respect to which the person aggrieved has followed the procedure set out in subsection (b) of this section, such charge shall be filed by the person aggrieved within two hundred and ten days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency."

11. 42 U.S.C. § 2000e–5(a) provides:

"(e) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) of this section (except that in either case such period may be extended to not more than sixty days upon a determination by the Commission that further efforts to secure voluntary compliance are warranted), the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge (1) by the person claiming to be aggrieved, or (2) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in

The Act empowers a district court to appoint an attorney for the aggrieved party and authorizes the commencement of the action without payment of fees, costs or security. The district court is also empowered to permit the Attorney General to intervene should he certify that the case is of general public importance. The interest of the public in this Act is recognized by Congress by the provisions giving the district court the power to appoint an attorney to represent aggrieved parties, to waive payment of fees, costs or security, and to permit the Attorney General to intervene in cases of general public importance.

The Fifth Circuit has recognized the heavy overtones of public interest in suits of this nature.

The case of Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28, involved a class action instituted by Jenkins, an employee of the defendant, who charged he had been the victim of racial discrimination in a promotion sought by him within the plant. After the commencement of the action, Jenkins was given the promotion and the district court sustained the motion of defendant to dismiss on the grounds that the issue had become moot. The Fifth Circuit reversed. The Court held the case to be very much alive not only on the element of back pay for Jenkins, but also on the element of the claim of plant-wide system-wide racially discriminatory employment practices, which the court said was of a great public importance.[12]

Then, again the public importance of the cases, sub judice, is emphasized in Pettway and Wrenn et al. v. American Cast Iron Pipe Co., 5 Cir., 411 F.2d 998, decided May 22, 1969, when the court in discussing a suit brought under the Act said:

"The suit is between private parties. The burden of enforcement rests on the individual through his suit in Federal District Court. But charges must first have been filed with EEOC. Consequently, the filing of charges and the giving of information by employees is essential to the Commission's administration of Title VII, the carrying out of the congressional policy embodied in the Act and the invocation of the sole sanction of Court compulsion through employee instituted suit. 'Whether in name or not, the suit is perforce a sort of class action for fellow employees similarly situated.' Jenkins, supra, 400 F.2d at 33. 'When conciliation has failed—either outright or by reason of the expiration of the statutory timetable—that individual, often obscure, takes on the mantle of the sovereign.' Jenkins, supra, 400 F.2d at 32. This is often the only way that such issues can be raised—by an individual drafting his charge as best he can without expert legal advice. This activity, essential as it is, must be protected."

In Miller et al. v. International Paper Co. et al., 5 Cir. 1969, 408 F.2d 283, the Fifth Circuit held:

"We held in Oatis that membership in the class cannot be restricted to in-

---

subsection (b) of this section or the efforts of the Commission to obtain voluntary compliance."

12. In *Jenkins* the court said:
"Although there are restrictions both in time and pre-conditions for court action this does not minimize the role of ostensibly private litigation in effectuating the congressional policies. To the contrary, this magnifies its importance while at the same time utilizing the powerful catalyst of conciliation through EEOC. The suit is therefore more than a private claim by the employee seeking the particular job which is at the bottom of the charge of

unlawful discrimination filed with EEOC. When conciliation has failed—either outright or by reason of the expiration of the statutory time-table—that individual, often obscure takes on the mantle of the sovereign. Newman v. Piggie Park Enterprises, 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263; Oatis v. Crown Zellerbach, supra. And the charge itself is something more than a single claim that a particular job has been denied him. Rather it is necessarily a dual one: (1) a specific job, promotion, etc., has actually been denied, and (2) this was due to Title VII forbidden discrimination." 400 F.2d page 32.

dividuals who have filed charges with the EEOC prior to the institution of suit. The district court here was apparently of the view that, since the filing of a charge with the EEOC is a jurisdictional prerequisite to filing suit, those individuals who had not filed charges with the EEOC could not be included in a class of persons who could properly file suit. Substantively, the district court's syllogism is inviolable. This court was quite clear in the Oatis case and in Jenkins v. United Gas Corp. that a complainant under Title VII cannot bypass the EEOC. The effect of a contrary holding would be virtually to eliminate the commission established by Congress to encourage fair employment practices. The fallacy of the district court's reasoning is that the matter is primarily procedural rather than substantive and thus the question is one of simple expediency. In this posture, it is perfectly clear that no procedural purpose could be served by requiring scores of substantially identical grievances to be processed through the EEOC when a single charge would be sufficient to effectuate both the letter and the spirit of Title VII." 408 F.2d 284–285.

In Oatis v. Crown Zellerbach Corp., 5 Cir. 1968, 398 F.2d 496, the court had for its consideration an action brought by four plaintiffs, only one of which filed a charge with EEOC. The district court held that the class represented in the suit should be limited to members of the class who had filed charges with EEOC, and dismissed the action as to the others. The Fifth Circuit reversed and held that where one plaintiff, a member of the class, filed a charge as required by the Act, such was not required of the other plaintiffs. The court said:

"The Supreme Court recently made an apt comment on the nature of suits brought under the Civil Rights Act of 1964. See Newman v. Piggie Park Enterprises, 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263, where the court stated:

'A Title II suit is thus private in form only. When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone, but also as a "private attorney general", vindicating a policy that Congress considered of the highest priority.'

Clearly the same logic applies to Title VII of the Act. Racial discrimination is by definition class discrimination, and to require a multiplicity of separate, identical charges before the EEOC, filed against the same employer, as a prerequisite to relief through resort to the court would tend to fustrate our system of justice and order." 398 F.2d page 499.

The Court holds that plaintiff in each of the cases sub judice is clothed with the "Mantle of the Sovereign" which can be asserted on behalf of all members of the Negro race who can qualify as members of the class represented by her.

Defendants assert that even though the additional plaintiffs may be permitted to join the actions as co-plaintiffs, relief in their behalf should be limited to injunctive relief.

The relief which a successful plaintiff can seek under the Act is set forth in 42 U.S.C. § 2000e–5(g), supra. (See No. 1). The Act places the duty on the Court to protect the interest of the public as well as that of the parties. The enforcement of the Act is accomplished by the relief afforded the aggrieved party, and, in class actions, the relief afforded the members of the class represented by the complaining party. When it is determined that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, it is the duty of the court to fashion the relief to be afforded the parties and the penalty to be exacted of the respondent. This duty must be performed by the court so that public as well as private interests may be served.

The Court, in its discretion, may (1) enjoin the respondent from engaging in

such unlawful employment practice, and (2) order such affirmative action as may be appropriate. The Court may, but is not required to, include in the relief afforded reinstatement or hiring of employees, with or without back pay.

The Court is of the opinion and so holds that the court's power to fashion the relief to be awarded the plaintiffs, on the trial of the issues should they receive a favorable decision, should not be hampered or burdened by limiting the scope of the relief fixed by the Act. To hold otherwise would tie the hands of the court and limit the enforcement provisions of the Act.

The Court holds that where members of the class represented in each of the cases sub judice enter the action as co-plaintiffs, they come into the case on the same basis and with the same standing as the original plaintiff, entitled to litigate all issues which plaintiff may litigate, and entitled to seek such relief as plaintiff may seek.

This holding is supported by *Oatis, Jenkins* and *Miller.*

In Oatis the class action was permitted within certain limitations. These limitations were established by the court in its opinion. The limitation set forth in the opinion, necessary to discuss here, is described as follows:

"Next, the issues that may be raised by plaintiff in such a class action are those issues that he has standing to raise (i. e., the issues as to which he is aggrieved, see § 706(a), supra), and that he has raised in the charge filed with the EEOC pursuant to § 706(a). Here then the issues that may be considered in the suit are those properly asserted by Hill in the EEOC charge and as are reasserted in the complaint.

\* \* \* \* \* \*

This emphasizes the reason for Oatis, Johnson and Young to appear as co-plaintiffs. They were each employed in a separate department of the plant. They were representative of their respective departments, as Hill was of his, in the class action. They, as co-

plaintiffs, must proceed however, within the periphery of the issues which Hill could assert." 398 F.2d 499.

The next question to be considered is the composition of the class represented by plaintiff in each action. As stated in Oatis the co-plaintiffs must proceed, within the periphery of the issues which plaintiff can assert.

In DC 693–S, the Sardis Luggage Co., Inc., the issues which plaintiff can assert are those set out in her charge filed with EEOC. In this charge plaintiff states that defendant discriminated against her in that on March 1, 1968, defendant refused to employ her on account of her race. The class for this action shall be limited to Negroes who have applied to defendant for work and who have been refused employment because of their race. The class will be divided, however, only such co-plaintiffs as may seek an order of the court directing defendant to hire them and/or pay them back wages, shall be those who made application for work with defendant, on or after March 1, 1968, and whose employment was refused on account of their race.

Plaintiff contends in her action against U. S. Industries, Inc., DC 694–S, that she applied for work on February 12, 1968, and was refused employment on account of her race. The Court will grant plaintiff's motion to file an amended complaint in this cause, subject to the same limitations as in the Sardis Luggage Company case.

An appropriate order will be entered in each case permitting plaintiff to prosecute the action as a class action, defining the class represented, and permitting plaintiff to file the amended complaint, a copy of which has been tendered with her motion. The relief which the additional parties may seek in the suit shall be restricted as hereinbefore mentioned.

The Court desires that it shall be clearly understood by all parties that in permitting plaintiff to file her amended complaints the Court does not intend to indicate what the ultimate outcome of

the cases may be, as the Court has not considered the merits of plaintiffs' case. Neither does the Court intend to indicate by his decision on the pending motions the extent of the relief to which plaintiffs may be entitled, should they ultimately prevail in either case. The Court holds that the relief which may, in any event, be granted plaintiffs is entirely within the sound discretion of the Court.