Rudolph C. AROS et al., Plaintiffs,

v.

McDONNELL DOUGLAS CORPORA-
TION, Defendant.

Civ. No. 71-2440-F.

United States District Court,
C. D. California.

Aug. 23, 1972.

Anderson, Litt, Lund & Tochman, Earle Tochman, Los Angeles, Cal., for plaintiffs.

Louis Lieber, Jr. and Eberhard Schmoller, Santa Monica, Cal., for defendant.

## MEMORANDUM OPINION

FERGUSON, District Judge.

Plaintiffs bring this action under Section 703(a) of Title VII of the Civil Rights Act of 1964 (hereinafter, the Act), 42 U.S.C. § 2000e–2(a), seeking injunctive relief, reinstatement and back pay for alleged unlawful discrimination on the basis of sex. Plaintiffs allege that defendant McDonnell Douglas Corporation engaged in a practice of requiring its male employees to maintain a certain hair length and style while not requiring its female employees to maintain the same hair length and style, and that their employment with defendant was terminated for the reason that they wore their hair in a longer style and refused to cut it upon the defendant's request.

McDonnell Douglas raises several issues by way of defense. (1) One of the plaintiffs, Edward F. Loughrey, did not file a charge with the Equal Employment Opportunity Commission within 90 days of the alleged unlawful employment practice as required by Section 706(d) of the Act, 42 U.S.C. § 2000e–5(d). (2) Employee grooming standards wherein the allowable length of hair is different for male and female employees is not unlawful sex discrimination under Section 703(a) of the Act. (3) The plaintiffs were terminated for reasons other than the length of their hair. (4) The court lacked jurisdiction because the Equal Employment Opportu-

nity Commission did not serve upon the defendant copies of the plaintiffs' complaints within a reasonable time after they were filed; nor did the Commission investigate the alleged unlawful employment practice and attempt conciliation as required by Sections 706(a) and (e) of the Act, 42 U.S.C. § 2000e-5(a) and 42 U.S.C. § 2000e-5(e). This last contention has been firmly resolved against the defendant. *See* Carr v. Conoco Plastics, Inc., 423 F.2d 57 (5th Cir. 1970), *cert. denied*, 400 U.S. 951, 91 S. Ct. 241, 27 L.Ed.2d 257; Johnson v. Seaboard Air Line Railroad Co., 405 F. 2d 645 (4th Cir. 1968), *cert. denied*, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451; Choate v. Caterpillar Tractor Co., 402 F.2d 357 (7th Cir. 1968).

McDonnell Douglas' first contention is that this court lacks jurisdiction to consider the claim of plaintiff Loughrey because he did not file a complaint with the Equal Employment Opportunity Commission within 90 days of the alleged unfair employment practice. It is admitted that plaintiffs Aros and Frolenko filed charges within the prescribed 90-day period. All three plaintiffs were terminated on September 25, 1970. Plaintiff Loughrey filed a written charge with the Commission on December 31, 1970, 97 days later. The question is whether plaintiff Loughrey is to be barred forever from asserting a claim of employment discrimination because he was seven days late in filing a charge with the Commission. The answer is he is not barred. The 90-day filing requirement is procedurally designed to insure that employers are not unduly prejudiced or disadvantaged by charges brought long after the occurrence of the alleged unfair employment practice. McDonnell Douglas has made no showing that it was in any way prejudiced by the untimely filing. Indeed, it is highly unlikely that it could show such prejudice, since plaintiffs Aros and Frolenko filed timely charges of employment discrimination arising out of the same incident in which all three plaintiffs were discharged.

■ Title VII is a remedial act, and the congressional purpose would not be furthered by requiring strict adherence to every procedural technicality. As the Fifth Circuit noted in the case of Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460–461 (5th Cir. 1970):

"Mindful of the remedial and humanitarian underpinnings of Title VII and of the crucial role played by the private litigant in the statutory scheme, courts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims brought under the Act." (Footnote omitted.)

■ Since plaintiff Loughrey's charge before the Commission was adequate and proper in every respect except that it was filed seven days late, this court holds that there has been substantial compliance with the statutory requirements, and the court has jurisdiction to consider the claim of plaintiff Loughrey along with those of the other two plaintiffs.

■ This conclusion, it should be noted, is entirely consistent—and is in fact required—by another line of cases which holds that a suit for violation of Title VII is necessarily a class action, as the evil sought to be ended is discrimination on the basis of a class characteristic. Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7th Cir. 1971); Hutchings v. United States Industries, Inc., 428 F.2d 303 (5th Cir. 1970); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969); Jenkins v. United Gas Corporation, 400 F.2d 28 (5th Cir. 1968); Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968). Since the court, in Title VII cases, has a special responsibility in the public interest to devise remedies which effectuate the policies of the Act as well as afford private relief to the individual employee instituting the complaint, an employment discrimination suit may be treated as a class action as to all forms of relief by any class member, and that relief should be available to all who were damaged by the unlawful employment practice regardless of

whether they filed charges with the Equal Employment Opportunity Commission. Sprogis v. United Air Lines, Inc., *supra*; Bowe v. Colgate-Palmolive Co., *supra*. Although the class of persons represented by plaintiffs here is very small—there were only five individuals employed by McDonnell Douglas in this special program, and the three who were terminated are represented as plaintiffs in this suit—the holdings of these cases require that even if Loughrey had filed no charge before the Commission, he should be permitted to maintain this action as a co-plaintiff on the same basis and with the same standing as the other plaintiffs who filed charges with the Commission. *See* Madlock v. Sardis Luggage Co., 302 F.Supp. 866 (N.D.Miss. 1969).

The substantive issue is whether employee grooming standards wherein the allowable length of hair is different for male and female employees constitute unlawful discrimination on the basis of sex within the meaning of Section 703(a) of the Act, 42 U.S.C. § 2000e–2(a). The authorities are divided. Two district courts have held that discrimination between males and females on the basis of length of hair constitutes a violation of the Act. Donohue v. Shoe Corporation of America, Inc., 337 F.Supp. 1357 (C.D.Cal. 1972); Roberts v. General Mills, Inc., 337 F.Supp. 1055 (N.D.Ohio 1971). The Equal Employment Opportunity Commission has reached this same conclusion. Decision No. 71–1529, 1 CCH Employment Practices Guide ¶ 6231 (April 2, 1971). Two district courts have held to the contrary. Baker v. California Land Title Co., 349 F.Supp. 235 (C.D.Cal. May 1, 1972); Dodge v. Giant Food, Inc., 3 F.E.P. Cases 374 (D. D.C. 1971).

Section 703(a) of the Act provides in relevant part as follows:

"It shall be an unlawful employment practice for any employer—

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."

■ The Equal Employment Opportunity Commission has determined that an individual's hair length and other personal appearance standards are terms and conditions of employment within the meaning of Section 703(a). Decision No. 71–1529, *supra*. This court agrees.

■ The courts have adopted a two-step approach to determine whether an employment practice is prohibited by Title VII. The first inquiry is whether the practice discriminates against any person or group on the basis of an impermissible criterion, *i.e.*, race, color, religion, sex or national origin. Secondly, if a practice is found to discriminate on the basis of religion, sex, or national origin, the practice may nevertheless be permissible in instances where it can be shown that religion, sex or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise. Section 703(e), 42 U.S.C. § 2000e–2(e). The burden of establishing that a discriminatory practice constitutes a bona fide occupational qualification rests with the employer. Bowe v. Colgate-Palmolive Co., *supra*; Weeks v. Southern Bell Telephone & Telegraph Co., 408 F.2d 228 (5th Cir. 1969).

■ Is an employee dress and grooming code, wherein the allowable length of hair is different for males than for females, discrimination on the basis of sex within the meaning of Section 703(a)? This court concludes that it is. Certainly such a dress and grooming code amounts to "discrimination" within the meaning of the Act. An Interpretative Memorandum of Title VII states:

"It has been suggested that the concept of discrimination is vague. In fact it is clear and simple and has no hidden meanings. To discriminate is to make a distinction, to make a difference in treatment or favor . . . ." Interpretative Memoran-

dum of Title VII of H.R. 7152, 110 Cong. Rec. 7213 (1964).

That interpretation reflects the common understanding of the word and has been adopted by courts construing Title VII. In Phillips v. Martin Marietta Corporation, 400 U.S. 542, 91 S.Ct. 496, 27 L. Ed.2d 613 (1970), the Supreme Court, reversing a summary judgment in the employer's favor, held that the practice of hiring men with preschool age children while refusing to hire women with preschool age children amounted to discrimination on the basis of sex, in that the Act does not permit "one hiring policy for women and another for men— each having pre-school age children." 400 U.S. at 544, 91 S.Ct. at 498. *See also* Sprogis v. United Air Lines, Inc., *supra*, where the court held the employer violated the Act "by applying one standard for men and one for women". 444 F.2d at 1198. It is clear, therefore, that the term "discrimination" in this context contains no qualifications. Every difference in treatment is discrimination. Such discrimination is permissible only if it can be justified as a bona fide occupational qualification.

Such a dress code is not only discrimination; it is discrimination on the basis of sex. In Sprogis v. United Air Lines, Inc., *supra*, the Seventh Circuit Court of Appeals noted:

"In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." 444 F.2d at 1198.

*See also* Phillips v. Martin Marietta Corporation, *supra*, 400 U.S. at 545–547, 91 S.Ct. 496 (Marshall, J., concurring). Moreover, the Equal Employment Opportunity Commission, whose interpretation of the Act is entitled to great deference by the courts, Griggs v. Duke Power Co., 401 U.S. 424, 433–434, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), has determined by regulation that "so long as sex is a factor in the application of the [employer's] rule, such application involves a discrimination based on sex". 29 C. F.R. § 1604.3(a). Faced with the exact question now before this court, the Commission determined that the application of a long-hair policy to males only was discrimination on the basis of sex. Decision No. 71–1529, *supra*. This conclusion is correct. Whenever male employees are subject to one standard while female employees are subject to a different standard, this is discrimination on the basis of sex.

It does not matter that such a dress rule affects only those males whose hair length contravenes the employer's standards and not all males. "The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class." Sprogis v. United Air Lines, Inc., *supra*, 444 F. 2d at 1198. *See also* 29 C.F.R. § 1604.-3(a). Nor is it necessary that members of one sex benefit at the expense of members of the other sex to whom the discriminatory employment practice is applied. In this case the class of employees represented by the plaintiffs consisted entirely of males, more by chance than design. No females benefitted from the application of the alleged long-hair policy; nor were their employment opportunities enhanced. Such a dress policy nevertheless discriminates on the basis of sex because it reflects a stereotyped attitude toward one of the sexes. *See* Sprogis v. United Air Lines, Inc., *supra*. It must be remembered that Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation". Griggs v. Duke Power Co., 401 U.S. 424 at 431, 91 S.Ct. 849 at 853 (1971).

This court holds, therefore, that an employee dress and grooming code, whether written or unwritten, wherein the allowable length of hair is different for male and female employees is discrimination on the basis of sex within the meaning of Section 703(a) of the Act. Such discrimination is unlawful unless it can be justified as a bona fide

occupational qualification under Section 703(e).

In reaching this conclusion, the court does not intend in the slightest to disparage, much less prohibit, dress and grooming standards for employees. An employer has every right to adopt dress codes suitable to various job categories. He can insist that his employees present a clean and neat appearance. The health of the employees and the efficient operation of the enterprise may require such standards. A dress and grooming code, however, must be applied equally to everyone. It may not establish different standards for males and females; it may not discriminate on the basis of sex.

The issue of long hair on men tends to arouse the passions of many in our society today. In that regard the issue is no different from the issues of race, color, religion, national origin and equal employment rights for women, all of which are raised in Title VII. When this Nation was settled it was hoped that there be established a society where every individual would be judged according to his ability rather than who his father was, or what foreign land his family came from, or which part of town he happened to live in, or what the color of his skin was. Since then, millions of individuals have landed on our shores in search of opportunity—opportunity which was denied them in their homelands because of rigid class structures and irrational group stereotypes. The Civil Rights Act of 1964 was born of that hope. Although the legal technicalities are many, the message of the Act is clear: every person is to be treated as an individual, with respect and dignity. Stereotypes based upon race, color, religion, sex or national origin are to be avoided.

Title VII of that Act is designed to insure equal employment opportunity for all. Specifically, it prohibits discrimination in employment based upon irrational stereotypes of race, color, religion, sex and national origin. It is sad that legislation with such lofty goals must be cast in the negative language of civil prohibitions.

Males with long hair conjure up exactly the sort of stereotyped responses Congress intended to be discarded. On a visceral level, long hair may be associated with youth, campus riots, unemployed hippies and "troublemakers". Some employers argue that their professional image and reputation may suffer from hiring men who prefer to wear their hair in longer styles. Title VII does not permit the employer to indulge in such generalizations. The Act requires that every individual be judged according to his own conduct and job performance. Any stereotyped image of males with longer hair as "troublemakers" unjustifiably punishes a large class of prospective, otherwise qualified and competent employees, where an individualized response could adequately dispose of any real employment conflicts. This court may take judicial notice that under the fashion norms of today it is quite permissible for men to wear their hair in longer styles than a few years ago. Longer male hair styles are now widely accepted and little burden is placed upon the average employer by prohibiting him from discriminating between the sexes on the basis of hair length. Of course, in the absence of a bona fide occupational qualification, such discrimination would be prohibited in any case. *See generally* Griggs v. Duke Power Co., *supra.*

Having determined that a complaint alleging a dress code applying different standards to males and females with regard to the permissible length of hair states a valid cause of action under Section 703(a) of the Act, it must still be determined whether, on the basis of the facts herein alleged and proved, McDonnell Douglas Corporation violated the Act by terminating the three plaintiffs.

Prior to their termination on September 25, 1970, the three plaintiffs had been working at McDonnell Douglas Corporation's Douglas Aircraft Company division in the Flight Test Department

for varying lengths of time up to two years. They were all students at Long Beach State College and were employed at McDonnell Douglas through the Long Beach State College Foundation, with which McDonnell Douglas had a contract for the furnishing of part-time assistants by Long Beach State College students. In the summer of 1970 there were five such students, including the three plaintiffs herein, working for McDonnell Douglas, all in the Flight Test Department. Although the work assignments of the five students differed in some minor respects, they were each required to perform substantially the same tasks in the course of their employment.

The case for the plaintiffs is based largely upon the following fact. As of September 25, 1970, three of the Long Beach State College students working at McDonnell Douglas were wearing their hair in longer styles, while the remaining two students wore their hair relatively short. The three students with longer hair—the plaintiffs herein—were terminated on that date, while the other two were retained in their positions. The plaintiffs claim that they were terminated solely because of the length of their hair. They have not proved this allegation.

The testimony elicited at trial indicates that there was some concern among the plaintiffs' superiors at McDonnell Douglas as to the grooming and conduct of the Long Beach State College students. At a meeting of the students called during the summer of 1970, their superiors voiced dissatisfaction with the students in a number of areas, including their too casual dress, their ill-groomed hair, their propensity to linger in the halls too often and enter parts of the plant where they didn't belong, and their failure to report back when they had completed an assignment. The facts simply do not permit the conclusion that the plaintiffs were discharged because of long hair. Rather, this court finds the company had decided to phase out the Long Beach State College Founda-

tion program because of a diminishing work requirement for part-time employees and because of a growing dissatisfaction with the part-time program. The two students who remained were selected on the basis of management's estimate that they were the best qualified for the part-time services which were still required. None of the positions vacated by the three plaintiffs was refilled by part-time workers.

 This court has determined that the plaintiffs were not terminated because of the length of their hair. Therefore, it need not determine whether length of hair constitutes a bona fide occupational qualification for the positions held by the plaintiffs.

This memorandum opinion shall constitute the court's findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.