Ernest WALKER et al., Plaintiffs,

v.

RALSTON PURINA COMPANY, a corporation, et al., Defendants.

Civ. A. No. 2908.

United States District Court,
M. D. Georgia,
Macon Division.

Feb. 27, 1976.

O. Peter Sherwood, Johnny J. Butler, New York City, Bernice Turner, Macon, Ga., for plaintiffs.

Edward S. Sell, Jr., Sell, Comer & Popper, Macon, Ga., Donald W. Rupprecht, Labor Counsel, Ralston-Purina Co., St. Louis, Mo., for defendants.

Matt Shade, Shade & McDonald, Atlanta, Ga., for Unions.

## AWARD OF ATTORNEYS' FEES AND COSTS

OWENS, District Judge.

This two year racial discrimination employment legal battle between present and former black employees of Ralston Purina Company's Macon, Georgia, plant on one side and Ralston Purina Company, the International Retail, Wholesale and Department Store Union, AFL–CIO and its Local Union 315 on the other side ended with the entry on September 30, 1975, of a consent decree that resolves all issues except attorneys fees and costs. That decree states:

"*V.   COST*

"Costs shall be assessed by the Court."

*   *   *   *   *   *

"*VII.   ATTORNEY'S FEES*

"After a hearing or the submission of briefs, the Court shall fix the amount of reasonable attorney's fees to which plaintiffs are entitled and the share of said costs and attorney's fees to be borne by the respective defendants."

Affidavits and briefs having been submitted and considered this constitutes the court's order fixing reasonable attorneys' fees and assessing costs.

■   The amount of attorneys' fees is left to the sound discretion of the trial judge, *Culpepper v. Reynolds Metals Co.,* 442 F.2d 1078 (5th Cir. 1971), it being acknowledged that the court is itself an expert on the question of attorneys' fees and as such may form its own independent judgment. *Weeks v. Southern Bell Tel. & Tel. Co.,* 467 F.2d 95 (5th Cir. 1972); *Massachusetts Mutual Life Insurance Co. v. Brock,* 405 F.2d 429 (5th Cir. 1968); *Davis v. Board of School Com'rs of Mobile County,* 526 F.2d 865 (5th Cir. 1976). In exercising its sound discretion the court is required to consider the standards and guidelines set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). In doing so it is important to keep in mind the introductory portion of that opinion, to wit:

"[1]   Section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–5(k), provides that:

In any action or proceeding under this subchapter the Court, in its discretion, may allow the prevailing party  .   .   .   a reasonable attorney's fee as part of the cost of litigation.

The purpose of this provision is to effectuate the congressional policy against racial discrimination. *Clark v. American Marine Corp.,* 320 F.Supp. 709 (E.D.La.1970), aff'd, 437 F.2d 959 (5th Cir. 1971). In discussing a similar provision in Title II, the United States Supreme Court observed that

If [the plaintiff] obtains an injunction, he does so not for himself alone but also as a 'private attorney gen-

eral,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief . . .

"*Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401–402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). This Court, as part of its obligation 'to make sure that Title VII works,' has liberally applied the attorney's fees provision of Title VII, recognizing the importance of private enforcement of civil rights legislation. *See Clark v. American Marine Corp., supra; Rowe v. G. M. Corp.,* 457 F.2d 348 (5th Cir. 1972); *Long v. Georgia Kraft Co.,* 455 F.2d 331 (5th Cir. 1972); *Lee v. Southern Home Sites Co.,* 444 F.2d 143 (5th Cir. 1971)." *Id.* at 716.

and the admonition of that court that:

"[7] We are mindful of the difficult job of the trial judge in cases of this kind, and that *in all probability his decision will be totally satisfactory to no one.* . . . The trial judge is necessarily called upon to question the time, expertise, and professional work of a lawyer which is always difficult and sometimes distasteful. But that is the task, . . . " *Id.* at 720. (emphasis added).

The plaintiffs from the outset were represented by Bernice Turner, a black female attorney who graduated from Emory University School of Law in June 1970, was admitted to the practice of law in May 1971 and has practiced law in Macon since August 5, 1971. She is one of only three black lawyers who generally represent black citizens of this large metropolitan area in civil rights cases. In her appearances in this court over a period of some three or more years she has very effectively prepared and presented the cases of her clients. Ms. Turner's affidavit shows that she has devoted some 676 hours to the preparation of plaintiffs' case. She requests that she be allowed reasonable attorneys' fees for 577 of those 676 hours already spent and that the court also allow for an estimated 125 hours to be spent by her during the three year life of the consent decree.

John Butler and O. Peter Sherwood are 1971 law graduates employed by the NAACP Legal Defense & Educational Fund, Inc. located in New York City. They have each assisted Ms. Turner to a limited extent in this case, Mr. Butler since early 1975 and Mr. Sherwood thereafter. Though admitted only four years ago to the practice of law Mr. Sherwood from the court's observation has acquired and demonstrates an expertise in employment discrimination cases. Mr. Butler devoted 32 hours and Mr. Sherwood devoted some 64$^{7}$/12 hours to plaintiffs' case. It is estimated that Mr. Sherwood will also spend an additional 20 hours during the three year life of the court decree.

Plaintiffs costs in the amount of $3,428.01 are submitted. Future costs are estimated at $250.00.

Plaintiffs move the court to allow reasonable attorneys' fees computed on the aforesaid billable hours at the following hourly rates:

Ms. Turner—$50 per hour plus $10 per hour in consideration of the case having been pursued on a contingent fee basis;

Mr. Sherwood—$75 per hour;

Mr. Butler—no suggested hourly rate.

Plaintiffs support these requests with affidavits from able, known trial practitioners showing that those suggested hourly rates are consistent with rates being charged by and paid to attorneys of similar experience in comparable matters.

Defendant Ralston submitted an affidavit showing the time devoted to this case by its salaried, full-time attorney Donald W. Rupprecht. Mr. Rupprecht in the court's opinion is a seasoned, experienced employee relations attorney who like Mr. Sherwood can properly be labeled an expert in cases of this nature. He states that he devoted only 171 hours to his client's case thereby in effect suggesting that plaintiffs' counsel Ms. Turner has devoted a much greater time than was reasonably necessary to plaintiffs' case. Mr. Rupprecht states that he was assisted by non-lawyer personnel who devoted 56 hours to this case. Ralston was also represented by Ed Sell, Jr., one of the most capable and most experienced members of the bar of this court. The time he devoted to this case has not been stated. His expertise in employment cases is demonstrated by his representative in this court and upon appeal of the Macon Telegraph in *Willingham v. Macon Telegraph Publishing Co.,* 352 F.Supp. 1018 (M.D.Ga.1972), *reversed,* 482 F.2d 535 (5th Cir. 1973), *aff'd en banc,* 507 F.2d 1084 (5th Cir. 1975).

■ Defendant unions suggest that the International Union on account of their having not been named in the charge filed with the Equal Employment Opportunity Commission cannot be ordered to pay attorneys' fees, *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). They further suggest that the local union does not have money with which to pay, was not shown to be a culpable party and should not be ordered to pay any portion of whatever is to be paid. As valid as these contentions may be, the defendant unions by consenting to the court's decree have consented to pay whatever the court determines is "the share of said costs and attorneys' fees to be borne by the respective defendants."

In making its determination the court has first considered the time spent on this case by Ms. Turner, Mr. Butler and Mr. Sherwood. No question has been raised as to Mr. Butler and Mr. Sherwood.

The court has examined their affidavits and has determined that their separate time was reasonably required and does not represent a duplication of effort on anyone else's part.

■ Ms. Turner's total time of 675 hours at first blush seemed to be greater than was reasonably required. An analysis of her time sheet shows that she spent some 150 of those hours between May 8, 1973, and the filing of plaintiffs' complaint on September 26, 1973. That amounts to approximately four weeks of total effort. Having investigated, researched and prepared complaints as a trial practitioner and having examined the work product of Ms. Turner—the precisely, concisely worded twenty-one page class action complaint—the court finds that said 150 hours were reasonably required for Ms. Turner to adequately investigate, research and prepare the complaint that was filed.

The remainder of Ms. Turner's time was spent with plaintiffs and in the class action, discovery, motion, briefing, corresponding and settling phases of the case. Evidence of Ms. Turner's work is the series of three files in this court containing legal papers stacked at least four inches deep. Without examining every page the court estimates that at least half of those were prepared by Ms. Turner.

Who can say how much of a lawyer's time or what steps, effort or strategy leads to victory? Who can say that Ms. Turner with an expenditure of less time and effort would have built the fire that was built under defendants to cause them to voluntarily pay the handsome sum of $70,000 that has been paid and to agree to substantial, far-reaching changes in their employment practices? The only perfect vision that this court knows of is "20/20 hindsight". That in common sense language is nothing more than second-guessing what plaintiffs' counsel did. The court cannot fault what she did or say that anything that she did is unnecessary. She was up against formidable foes—(a) one of this country's major corporations represented

by able, expert house counsel and by one of Macon's oldest, most respected law firms, and (b) one of this country's major unions and its expert counsel. What she got came the hard way—through the formalities of the court process and in spite of the steady unyielding resistance of the defendants. With more experience, age and years of trial practice she probably could have done what she did in less time but that probability goes to the question of her hourly compensation rate and not to the question of what time was reasonably required to effect the result that was effected. For Ms. Turner to accomplish what was accomplished reasonably required her to do all that she did.

While the principles of law asserted by the plaintiffs are neither new nor novel, their application in this district court is a now venture and their application to Ralston Purina Company in Macon, Georgia, as demonstrated by the two years it took plaintiffs to convince defendants of the desirability of settlement, was most difficult. While Ms. Turner had some experience in EEOC matters, she as far as the court knows had never prepared and pursued a similar case in any United States district court. This was a case of first impression to her as a trial practitioner. As was said in *Johnson v. Georgia Highway Express, Inc., supra,* at 718:

> "(2) *The novelty and difficulty of the questions.* Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may 'make new law.' Instead, he should be appropriately compensated for accepting the challenge."

Since the plaintiffs were complaining of continuing employment discrimination it was most important to them that their case be given the highest priority and handled without delay or procrastination. This prevented Ms. Turner from performing other legal services for persons other than plaintiffs. For this she is entitled to some premium.

Having departed the private practice of law only some four years ago and having kept abreast of changes since then, the court is familiar with the range of monetary compensation of lawyers who practice in this court.

■ All things considered it is the opinion of this court that Ms. Turner is entitled to be compensated at an hourly rate of $35.00; that Mr. Sherwood is entitled to be compensated at an hourly rate of $75.00, and that Mr. Butler is entitled to be compensated at an hourly rate of $50.00.

■ In making an award of attorneys' fees the court is unwilling to "guesstimate" the future time that plaintiffs' counsel will be required to devote to concluding this case. Instead the court defers the decision of attorneys' fees as to future time until this case has been finally completed and further application is made.

As to attorneys' fees for time already expended the court thus awards Ms. Turner $19,985.00 (571 hours × $35.00); Mr. Sherwood $4,875.00 (65 hours × $75.00); Mr. Butler $1,600.00 (32 hours × $50.00), and plaintiffs' cost of $3,428.01, all of which shall be paid by the defendant company and unions with each paying their proportionate share computed on the same percentage basis as they agreed among themselves to pay the monies already paid to members of the plaintiff class.